F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  SEP 28 2018  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KOMATSU EQUIPMENT COMPANY,

            Plaintiff,

- against-

RAVYN & ROBYN CONSTRUCTION, LLC
d/b/a TOTALINE, INC., and CHRISTINA SINA,

            Defendants.
----------------------------------------------------------------X
TOTALINE INC. and RAVYN & ROBYN
CONSTRUCTION, LLC,

            Defendants/Third-Party Plaintiffs,

- against-

INDUSTRIAL WATER SOLUTIONS, LLC,
JOHN DOES 1-10, and ABC CORPS 1-10,

            Third-Party Defendants.
----------------------------------------------------------------X

**ORDER**
17-CV-2010 (SJF)(AYS)

FEUERSTEIN, District Judge:

    Two motions are presently pending before the Court: Plaintiff Komatsu Equipment Company ("Komatsu") has moved for summary judgment against Defendants Ravyn & Robyn Construction, LLC d/b/a Totaline Inc. ("Totaline"), Christina Sina ("Sina") (collectively, Defendants), Motion, Docket Entry ("DE") [28], and Third-Party Defendant Industrial Water Solutions, LLC ("IWS") has moved to dismiss the third-party complaint filed by Defendants/Third-Party Plaintiffs Totaline and Ravyn & Robyn Construction LLC. Motion, DE [24]. Both motions were referred to Magistrate Judge Anne Y. Shields for Report and Recommendation. On July 27, 2018, Magistrate Judge Shields recommended that the motion to dismiss be granted and the third-party complaint dismissed. *See* Report & Recommendation

("R12 Report"), DE [32].  By separate Report and Recommendation dated August 8, 2018, Magistrate Judge Shields recommended that Komatsu's motion for summary judgment be granted.  *See* Report & Recommendation ("R56 Report"), DE [33].  Objections to both Reports have been filed.  For the reasons set forth below, Magistrate Judge Shields's Reports are accepted in their entirety.

**I.  STANDARD OF REVIEW**

A party may serve and file written objections to a report and recommendation of a magistrate on a dispositive matter within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2).  Any portion of such a report and recommendation to which a timely objection has been made is given a *de novo* review. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).  Even upon a review *de novo*, however, "the Court ordinarily will not consider 'arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance.'" *Markey v. Lapolla Indus., Inc.*, No. 12-CV-4622, 2016 WL 324968, at *3 (E.D.N.Y. Jan. 26, 2016) (quoting *Kennedy v. Adamo,* No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal quotation marks and citation omitted)).

To accept the report and recommendation of a magistrate judge to which no specific, timely objection has been made, the district judge need only be satisfied that there is no clear error apparent on the face of the record. FED. R. CIV. P. 72(b); *Spence v. Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000).   Regardless of whether proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The Court may, in its discretion consider, or refuse to consider, new evidence raised for

2

the first time in an objection to a Report and Recommendation. *See Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir. 1998); *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir. 1994). Accepting new evidence is generally disfavored, however, as such an action "would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.'" *Vega v. Artuz,* No. 97-cv-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (internal citations omitted); *see also Wesley v. Alexander*, No. 99-cv-2168, 2005 WL 1352593, at *6 (S.D.N.Y. June 8, 2005) ("[I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge.... Such a fast shuffle of the orderly process of federal litigation should not be encouraged" (quoting *Patterson-Leitch Co. v. Massachusetts Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir. 1988))).

Timely objections have been received as to each Report. Defendants' objections to the R56 Report include their Rule 56.1 counterstatement of material facts, which was not previously filed or served. In addition, Defendants have attempted to submit additional affidavits more than a month after their original objections were filed. These filings will be discussed as necessary below.

## II. DISCUSSION

This case arises from work performed at during the construction of a wastewater treatment and disposal facility known as the Hornbuckle Facility. Totaline entered into a Subcontractor Agreement with non-party PATE Environmental Technology Ventures Operating Inc. ("PATE Operating") to provide construction services at the site. Totaline in turn contracted with Komatsu to rent heavy construction equipment. Sina executed a Personal Continuing Guaranty Agreement (the "Guaranty") unconditionally guaranteeing Totaline's obligations to

3

Komatsu.[1]

Komatsu commenced this action alleging breach of contract, breach of guaranty, and an account stated, seeking to recover the cost of unpaid invoices from Totaline. Totaline in turn filed a third-party action seeking indemnification from IWS, the successor corporation to PATE Environmental Technology Ventures Wyoming, Inc. Totaline also asserts claims of unjust enrichment, and breach of the covenants of good faith and fair dealing by IWS.

**A. Motion for Summary Judgment**

1. Rule 56.1 Counterstatement

Local Civil Rule 56.1 mandates that "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," Local Civil Rule 56.1(b), and that absent such a responsive statement, "the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion." Local Civil Rule 56.1(c); *see also T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

Magistrate Judge Shields deemed Komatsu's factual statements admitted as they referred to admissible evidence and Defendants' failed to file a counterstatement. Defendants now claim that their failure was the result of an "oversight," that they did not realize their omission until

---

[1] As discussed in the R56 Report, Totaline and Sina originally disputed the authenticity of the Guaranty and maintained that position, characterized by the Magistrate Judge as a "blatant misrepresentation" and a choice to "perpetuate an argument it knows to be false." R56 Report at 14, 15. In the most recent version of Sina's affidavit, provided after the objections were filed, Sina "accept[s]" that she signed the Guaranty. Sina Affidavit, DE [39].

4

reading the R56 Report, and were "stunned" to learn of their failure. Defs. Letter, DE [35-1]. They have offered no reason whatsoever for this oversight either by letter or affidavit, but have submitted their counterstatement as part of their objections. The Court, in an exercise of its discretion, concurs with the Magistrate Judge's recommendation deeming Komatsu's factual statements admitted.

2. Objections to the R56 Report

The R56 Report recommends that Komatsu's motion be granted, and that Komatsu be awarded $229,110.91 in damages, plus contractual attorneys' fees in the amount of $20,425.00 for a total award of $249,535.91. Defendants state that Magistrate Judge Shields erred by (1) granting summary judgment without affording them discovery, Objections at p. 6, DE [35]; (2) ignoring Defendants' arguments that Komastu waived its contractual rights by accepting payments from the general contractor, Obj. at p. 7; (3) improperly relying upon hearsay evidence, specifically data from Komatu's KOMTRAX satellite tracking system, Obj. at p. 11; (4) failing to determine that this Court lacks subject matter jurisdiction, Obj. at p. 17; and (5) finding for Komatsu on the account stated claim in the absence of an overt agreement on the amounts owed. Obj. at p. 18. No objection has been raised as to the determination of a reasonable attorneys' fee.

Despite Defendants' assertion that discovery is necessary, there is no indication that Defendants sought any discovery prior to the briefing of the motion. Moreover, until yesterday, Defendants did not avail themselves of the procedure offered by Rule 56(d) by which a nonmovant may seek discovery necessary to its opposition. "A litigant may resist a summary judgment motion by asserting the need for additional discovery, but in so doing must comply with the requirements of Federal Rule of Civil Procedure 56(d) by submitting an affidavit that

includes 'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.'" *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 621 F. App'x 70, 73 (2d Cir. 2015) (summary order) (quoting *Paddington Partners*, 34 F.3d at 1138). Although Defendants in their memorandum of law in opposition to the motion, list "six material factual questions" requiring discovery, mere mention of discovery needs in responsive papers does not satisfy the requirements for relief under Rule 56(d).

On September 27, 2018, Defendants filed a cover letter with two additional affidavits. In the cover letter, defense counsel indicates that his attached affidavit constitutes a motion to seek discovery pursuant to Rule 54(d), but suggests alternatively that the Court "simply add" the papers to Defendants' opposition. Ltr. of 9/27/18, DE [41-2]. To the extent Defendants seek Rule 56(d) discovery by this submission, the request is denied as untimely and on the merits. Counsel states that Defendants did not conduct discovery "because a discovery schedule was never set," but they did not seek any schedule. As such, they have made no efforts to obtain the facts they now seek to discover at the eleventh hour by way of a Rule 56(d) motion. To the extent that the affidavit from Kyle Macklin, a licensed heavy equipment operator who worked at the Hornbuckle Facility project, constitutes "new evidence," it has been submitted for the first time as part of Defendants' objections. Counsel claims that Defendants "tried to locate" Macklin for several months, but was only able to do so "recently." Matsikoudis Affidavit ¶5, DE [41-1]. Court, in its discretion, declines to consider the Macklin affidavit.

Magistrate Judge Shields, citing Utah law requiring mutual assent to modify a contract, determined that there was no evidence that Komatsu agreed to any modification of the Contract

6

with Defendants. In fact, the Contract between Plaintiff and Defendants includes a "No Waiver" clause stating in effect that Komatsu's delay or failure in exercising or enforcing a right will not be considered a waiver, and any waiver by it under a specific circumstance "will not be deemed a waiver of that right in any other circumstance or a waiver of any other right." Contract, DE [28-3]. It further provides that "[a] waiver to be valid will be in writing." *Id.* Despite the presence of this express contractual provision, Defendants claim that the Magistrate Judge ignored their argument that Komatsu waived its rights under the contract by coordinating with the general contractor on the project rather than Defendants, citing *Maak v. IHC Health Servs., Inc.*, 372 P.3d 64, 74 (Utah Ct. App. 2016) and *Anderson v. Brinkerhoff*, 756 P.2d 95, 98 (Utah Ct. App. 1988).

Upon review of those cases, the Court concludes that they are inapplicable to the case at bar. The *Maak* case merely sets forth broad statements of Utah law on waiver, but does not itself find that a waiver existed in that case. *Maak,* 372 P.3d at 75 (vacating and remanding with respect to the purported waiver of counterclaims). The *Anderson* case was a family contract dispute in which the appellate court affirmed the lower court's determination that the contract was not abandoned where one party "had merely waived strict compliance with the contractual terms" and that the contract remained "in full force and effect." *Anderson,* 756 P.2d at 99. This case supports the proposition that deviance from a contract's terms does not necessarily result in a waiver of that agreement. Defendants also point to the Magistrate Judge's failure to address "the strongest evidence creating an issue of fact [as] to whether Komatsu and the PATE entities agreed to let PATE take over payments." Obj. at 9. Whether or not Komatsu allowed some other entity make a payment from time to time on Totaline's behalf in no way relieves Totaline's contractual obligations.

7

Defendants object to the use of Komatsu's KOMTRAX data. Contrary to their contention, Magistrate Judge Shields discussion of the KOMTRAX data is not "blind acceptance" of that information, but rather a finding that Defendants had not created a genuine issue of fact as to the use of that data by Komatsu in calculating its damages. The invoices themselves were the basis for liability on the account stated claim, and Komatsu submitted a detailed affidavit from its Credit Manager, Jason Gladden, regarding those documents. The invoices presented the amounts owed and, pursuant to the terms of the Contract, Totaline had sixty (60) days to dispute, in writing, any invoice rendered. It is undisputed that Totaline never objected to an invoice. The parties had a contractual agreement that included Totaline's obligation to pay for the rented equipment as evidenced by the invoices. "A party who receives an account is bound to examine it, and if that party admits that the account is correct, it becomes a stated account binding on both parties. Express assent to the account is not necessary; assent may be inferred by silence when an account rendered remains unquestioned a reasonable time after receipt." *Lantec, Inc. v. Novell, Inc.*, No. 2:95CV97, 2001 WL 1916256, at *9 (D. Utah May 8, 2001).

Finally, Defendants claim that this Court lacks subject matter jurisdiction in light of allegedly conflicting forum selection clauses that they argue provide exclusive jurisdiction and legal venue to Salt Lake County, Utah. To the extent there is any conflict raised by these provisions, it does not present an issue affecting this Court's subject matter jurisdiction. The Supreme Court has indicated that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). "The appropriate procedural mechanism for filing a motion to enforce

8

a forum selection clause designating a foreign forum is a motion to dismiss for *forum non conveniens*." *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 838 (S.D.N.Y. 2017). Instead of filing a timely motion to dismiss or properly briefing this issue, Defendants suggested that this Court "should dismiss this action" in a one-paragraph, four-sentence buried on page fifteen (15) of its memorandum of law in opposition to the motion for summary judgment, *see* Mem. in Opp., DE [26], and attempt to buttress this claim in their objections. Defendants' belated contentions are untimely and their arguments were not properly raised before the Magistrate Judge. *See, e.g., Abu-Nassar v. Elders Futures, Inc.,* No. 88 Civ. 7906, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994). To the extent their sparse arguments can be construed as a motion to dismiss for *forum non conveniens,* that motion is denied.

Upon *de novo* review of the R56 Report, the pleadings, motion papers, and considering Defendants objections to the R56 Report, the recommendation that Komatsu's motion for summary judgment be granted is accepted in its entirety.

**B.    Motion to Dismiss the Third-Party Complaint**

The R12 Report recommends that the motion to be dismiss the third-party complaint be granted and the case dismissed. In its Objections, *see* DE [34], Totaline disputes "factual findings and omissions" in the Report, objects to the finding that there could be no implied indemnification between Totaline and IWS, objects to the finding that there is no claim for unjust enrichment, and argues that leave to amend should be granted. As to the R12 Report's factual findings, Totaline objects that Magistrate Judge Shields erred in: (1) omitting discussion of the "ethical failures" of non-party Water Ventures Management LLC,  Obj. ¶1; (2) failed to find that the scope of the Subcontractor Agreement was "indeterminate," *id.* ¶2; (3) failed to acknowledge

9

allegations of "outlays" made by Totaline as a result of orders entered by IWS or PATE Operating, *id.* ¶3; and (4) failed to note an email sent by a principal of IWS that expressed "gratitude for Totaline 'carrying'" expenses related to the facility. *Id.* ¶4. In addition, Totaline argues that Magistrate Judge Shields applied the wrong legal standard in that she did not consider the factual allegations as true.

1. Indemnification Claim

With respect to Totaline's claim for indemnification, it alleges, *inter alia,* that Magistrate Judge Shields erred in finding that there was no "special relationship" between IWS and Totaline given the "infinitely malleable corporate pyramid of IWS." R12 Report at 6; Obj. at p. 9. Totaline claims that it does not know "exactly how it was robbed, but there is a 100% chance that the person(s) who did it was an executive at IWS." Obj. at 10.

Totaline does not argue that it is entitled to indemnification by operation of an express contractual provision, and indeed, no such provision exists in the agreements. Where such a provision is absent, a party may be entitled to common law or implied indemnification where there is some special relationship between the indemnitee and the indemnitor. *See Overton v. Todman & Co.*, No. 05 Civ. 7956, 2009 WL 3154307, at *3 (S.D.N.Y. Sept. 24, 2009) ("an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them" (quoting *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24, 494 N.Y.S.2d 851, 484 N.E.2d 1354) (internal quotations and citation omitted))). "[T]ypes of relationships that can support a claim of implied indemnification include: master-servant, employer-employee, agent-principal, partner-partner, and owner-guest." *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. CV141095, 2016 WL 11264722, at *33 (E.D.N.Y. Aug. 12, 2016), *adopted by* 2016

10

WL 8671839 (E.D.N.Y. Sept. 16, 2016). Based on a *de novo* review, the Court agrees with Magistrate Judge Shields's recommendation and independently finds that there is no relationship between Totaline and IWS that would entitle the former to indemnification. For the reasons set forth in the R12 Report, the motion to dismiss this claim is granted.

    2.  <u>Unjust Enrichment Claim</u>

With respect to the unjust enrichment claim, Totaline alleges, *inter alia,* that Magistrate Judge Shields erred in "overstating the scope of the Subcontractor Agreement and the Side Letter" (Obj. at p. 11) and precluding claims for transactions extraneous to those agreements. Totaline contends that, "the two contracts were limited to construction work performed by Totaline in preparing the facility" (Obj. at p. 11). As such, Totaline argues, the Magistrate Judge erred in concluding that an unjust enrichment claim pertaining to transactions extraneous to the agreements was also precluded.

Upon review, the Court agrees with the R12 Report's finding that, to the extent Totaline seeks repayment of monies paid to Komatsu for the rental of construction equipment, an unjust enrichment claim is precluded by the existence of the agreements. Indeed, Totaline concedes in its objections that "[c]onstruction related unjust enrichment may certainly be precluded." (Obj. at 13). Totaline now asserts that some unspecified "extraneous" transaction supports an independent claim for unjust enrichment.

The third-party complaint attaches an email from Kerry Smith, a principal of IWS, to Christine at Totaline wherein Smith says "we really appreciate you carrying us." Totaline argues that this language refers not to construction-related expenditures but rather to monies paid to carry the project financially. Thus, it argues, the basis for the unjust enrichment claim is not construction work covered by the agreements, but instead "involves non-construction activities

11

such as financing the facility and permitting IWS personnel to rent vehicles for non-construction purposes." Obj. at p. 13. This contention and supporting factual allegations are absent from the third-party complaint. Furthermore, the third-party action was commenced pursuant to Rule 14(a), which provides that a defendant may serve a third-party complaint "on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a). The purported claim regarding the "extraneous transaction" has no relation to Komatsu's first party action against the Defendants and is dismissed.[2]

### 3. Remaining Claims

Totaline does not object to the recommendation that the claims for breach of contract and breach of the covenant of good faith and fair dealing be dismissed. As there is no clear error on the face of the Report with respect to Magistrate Judge Shields's findings, conclusions, or recommendations as to these claims, the Court accepts those findings, conclusions, and recommendations in their entirety. *See, e.g., Mayes v. Summit Ent'mt Corp.,* 287 F. Supp. 3d 200, 203 (E.D.N.Y. 2018) (noting that "[i]n reviewing an R&R from a magistrate judge regarding a dispositive motion, the district court may adopt those portions of the Report to which no objections have been made and which are not facially erroneous" (internal quotations and citations omitted)). Accordingly, the remainder of the Report is accepted in its entirety and, for the reasons set forth therein, these claims dismissed.

### 4. Leave to Amend

Totaline argues that it should be granted leave to amend or, alternatively, that the dismissal should be without prejudice. It proposes the addition of new factual allegations and

---

[2] The Court notes, however, that the dismissal regarding any "extraneous transactions" not arising out of Totaline's contracts with Komatsu is not on the merits and is made without prejudice.

12

new claims including conversion, fraud and conspiracy against "various members of the IWS family of companies." Leave to amend the third-party complaint is denied. As with the possible unjust enrichment claim regarding transactions extraneous to the Komatsu-Totaline contractual relationship, the denial of leave to amend the third-party complaint is not a ruling on the merits of any potential claim not expressly raised and dismissed in this litigation.

### III.  CONCLUSION

For the reasons set forth above, the objections are overruled and the R12 Report and R56 Report are accepted in their entireties.

Accordingly, plaintiff's motion for summary judgment, DE [28], is granted, and judgment shall be entered in its favor and against defendants in the total amount of $249,535.91. Third-party defendant's motion to dismiss the third-party complaint, DE [24], is granted, and the case dismissed.

**SO ORDERED**.

        /s/
Sandra J. Feuerstein
United States District Judge

Dated: September 28, 2018
      Central Islip, New York

13